# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LOYCE PRYOR,

    Petitioner,                                CASE NO. 2:06-11667
                                              HONORABLE PAUL D. BORMAN
v.                                                   UNITED STATES DISTRICT JUDGE

KENNETH McKEE,

    Respondent.

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

Loyce Pryor, ("petitioner"), presently confined at the Newberry Correctional Facility in Newberry, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317; M.S.A. 28.549. For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Petitioner was originally charged with two counts of first-degree premeditated murder. Petitioner was convicted of one count of the lesser included offense of second-degree murder following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

    This case arose initially out of Lionel Beauchamp's supposed belief that DuJuan

Gilchrist stole his car. According to the testimony of Beauchamp's cousin, Vaudi Higginbotham, Beauchamp offered Higginbotham $500 to kill Gilchrist. Beauchamp and Higginbotham encountered defendant a day or two later, at which time Beauchamp told defendant that Gilchrist had stolen his car. Defendant offered to catch Gilchrist and "bust his head," but Beauchamp told him that Higginbotham would "take care of it." Defendant then offered to help Higginbotham.

Higginbotham testified that, at around 1:30 a.m. on December 22, 2000, he and defendant went to a house where Gilchrist and his fifteen year old cousin, Chaz Richards, along with two other individuals, Michael McGhee and a Robbie "D," were playing dice. Beauchamp arrived about a half hour after defendant and Higginbotham, and then he left with McGhee and Robbie "D," telling Higginbotham to kill Gilchrist while he was gone. Beauchamp returned to the house a short while later, but Higginbotham had gotten scared and had not killed Gilchrist. Beauchamp and defendant then left the house, again telling Higginbotham to kill Gilchrist while they were gone. When Beauchamp and defendant returned, Higginbotham met them on the porch and told them that he did not kill Gilchrist because he was scared and changed his mind. At that time defendant offered to help Higginbotham by holding Gilchrist's arms.

Higginbotham further testified that he, Beauchamp, and defendant then entered the house, where Gilchrist was sitting at the dining room table and Richards was sleeping on the couch in the living room. Defendant approached Gilchrist and, when Beauchamp nodded, grabbed Gilchrist's arms. Higginbotham then shot Gilchrist once in the head with a .357 caliber revolver that had been at Gilchrist's feet, killing him. Beauchamp was in the living room, standing over Richards and holding a .40 caliber semiautomatic pistol. Beauchamp then told Higginbotham to shoot Richards because he was a witness and offered him an additional $ 500. Higginbotham shot Richards at least three times, killing him also. Defendant and Beauchamp left the house, driving away together. Higginbotham walked away, throwing the gun into a field.

*People v. Pryor,* No. 248093, * 1-2 (Mich.Ct.App. June 14, 2005).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 474 Mich. 909; 705 N.W. 2d 129 (2005). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Whether Appellant's rights under the 14th Amendment of the U.S. Constitution and Section 17, Article 1 of the Michigan Constitution 1963 were denied when the prosecution engaged in prosecutorial misconduct in its closing and rebuttal arguments by vouching for the truthfulness of its key witness and where the

2

prosecutor presented evidence that he had made a deal with Vaudi Higginbotham in exchange for "truthful testimony," under circumstances that suggested to the jury that the prosecutor had "special knowledge" of what the truth was.

II. Defense trial counsel was constitutionally ineffective in failing to object to the prosecutor vouching for codefendant's credibility and eliciting that the prosecutor had allowed the codefendant to plead guilty before trial in exchange for "truthful" testimony.

## II. STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. ANALYSIS

In his first claim, petitioner alleges that the prosecutor committed misconduct by vouching for his witnesses' credibility at trial. In his second claim, petitioner contends that counsel was ineffective for failing to object to the prosecutorial misconduct.

Respondent contends that petitioner's prosecutorial misconduct claim is procedurally defaulted, because petitioner failed to object to the alleged misconduct at trial. Petitioner, however, as indicated above, claims that counsel was ineffective for failing to object to the prosecutor's remarks. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the prosecutorial misconduct claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). Moreover, for purposes of judicial economy, this Court will address petitioner's prosecutorial misconduct claim together with his related ineffective assistance of counsel claim. *See Millender v. Adams,* 187 F. Supp. 2d 852, 874 (E.D. Mich. 2002).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the

4

jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted). The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F. 3d 486, 537 and n. 43 (6th Cir. 2000). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner first claims that the prosecutor improperly vouched for Higginbotham's credibility by eliciting testimony that the witness had entered into a plea agreement to testify truthfully. These questions and comments did not amount to improper vouching, because they

5

merely encompassed the terms of Higginbotham's plea agreement with the state. *See United States v. Trujillo,* 376 F. 3d 593, 608-09 (6th Cir. 2004); *See also United States v. Owens,* 426 F. 3d 800, 806-07 (6th Cir. 2005).

Petitioner next claims that the prosecutor engaged in improper vouching by making remarks during his closing and rebuttal arguments, in which he argued that Higginbotham and Officer Greg Edwards were telling the truth and were not lying.

The prosecutor's closing and rebuttal arguments consisted of thirty eight pages. (T. 2/13/2003, pp. 95-120; 136-147). The trial court admonished the jury before the prosecutor began his closing argument, and again before he began his rebuttal, that what the lawyers said in closing argument was not evidence. (*Id.* at pp. 95, 136). The prosecutor himself acknowledged at the beginning of his closing argument that his remarks were not evidence and that the jury's collective memory as to the facts controlled. The prosecutor also conceded that it was the jury's domain to determine the witnesses' credibility. (*Id.* at pp. 96-97). Finally, at the conclusion of the closing arguments, the trial court again advised the jury that the lawyers' opening statements and closing arguments were not evidence. The court further admonished the jurors to only accept the things that the lawyers said which were supported by the evidence. (*Id.* at p. 157). The trial court also instructed the jurors about the factors that they should use to evaluate the credibility of the witnesses and specifically advised the jurors that they should examine Higginbotham's testimony more cautiously, because he was an accomplice to the crime. (*Id.* at pp. 159-162).

In this case, any alleged vouching for the credibility of witnesses did not rise to the level of a due process violation, in light of the fact that the jury was informed by both the prosecutor

and the judge that the prosecutor's arguments were not evidence and the judge instructed jury as to the factors to consider in evaluating the credibility of the witnesses' testimony. *Byrd,* 209 F. 3d at 537-38. Moreover, because the prosecutor also conceded in his closing argument that the witnesses' credibility was for the jury to determine, any improper vouching did not render the trial fundamentally unfair. *See Shacks v. Tessmer,* 9 Fed. Appx. 344, 349-50 (6th Cir. 2001).

Moreover, as the Michigan Court of Appeals noted, when viewed in the context of the entire closing argument, the prosecutor's remarks on the credibility of the witnesses were based on the evidence presented at trial and did not suggest that the prosecutor had any special knowledge of the truth that was unknown to the jury. The Michigan Court of Appeals further held that the prosecutor's rebuttal remarks were proper because they were made in response to defense counsel's argument that Higginbotham had lied. *Pryor,* Slip. Op. at * 3.

The prosecutor's comments about the credibility of Higginbotham and Officer Edwards did not amount to improper vouching, because the prosecutor was merely noting the consistency between their testimony and other evidence and emphasizing that the witnesses had no reason to lie. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *cert. den.* 127 S. Ct. 2294 (2007); *See also See also Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006); *cert. den. sub nom. Houk v. Joseph,* 127 S. Ct. 1827 (2007). In particular, the prosecutor's remarks about Officer Edwards did not amount to improper vouching, because the prosecutor was merely pointing out various discrepancies between Edwards' testimony and petitioner's testimony. *See U.S. v. Rankin,* 1 Fed. Appx. 389, 394 (6th Cir. 2001). Finally, the prosecutor's comments about how Higginbotham did not engage in blame shifting, that he took full responsibility for the shooting, and that he admitted his role in the shooting did not amount to

7

improper vouching because they were made in the context of arguing that Higginbotham had did not gratuitously enlarge petitioner's role in the murders and was thus part of a rhetorical statement to highlight that Higginbotham had no motivation to lie. *See U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005).

Finally, the fact that the jury acquitted petitioner of two counts of first-degree premeditated murder and convicted him of only one count of the lesser offense of second-degree murder shows that the jury must not have been swayed by any alleged vouching on the part of the prosecutor. *Shacks,* 9 Fed. Appx. at 350. Petitioner is therefore not entitled to habeas relief on his first claim.

The Court will likewise reject petitioner's ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).

Petitioner cannot show that counsel was ineffective for failing to object to the prosecutor's alleged misconduct, in light of the fact that the Michigan Court of Appeals found

on direct appeal that the remarks and questions were not improper. *See Finkes v. Timmerman-Cooper,* 159 Fed. Appx. 604, 611 (6th Cir. 2005);*Campbell v. United States,* 266 F. Supp. 2d 587, 589-90 (E.D. Mich. 2003). Because the prosecutor's comments did not amount to improper vouching, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003). Petitioner is not entitled to habeas relief on his second claim.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 5, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 5, 2007.

s/Denise Goodine
Case Manager